UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CAROL M.,

                             Plaintiff,

                v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                             Defendant.
_____

**DECISION
and
ORDER**

**19-CV-6599F**
(**consent**)

APPEARANCES:        LAW OFFICES OF KENNETH R. HILLER, PLLC
                           Attorneys for Plaintiff
                           KENNETH R. HILLER, and
                           AMY C. CHAMBERS, of Counsel
                           6000 North Bailey Avenue, Suite 1A
                           Amherst, New York  14226

                           JAMES P. KENNEDY, JR.
                           UNITED STATES ATTORNEY
                           Attorney for Defendant
                           Federal Centre
                           138 Delaware Avenue
                           Buffalo, New York  14202
                                and
                           KATHRYN L. SMITH
                           Assistant United States Attorney
                           United States Attorney's Office
                           100 State Street
                           Rochester, New York  14614
                                and
                           FRANCIS D. TANKARD, and
                           KEVIN BRADLEY MURPHY
                           Special Assistant United States Attorneys, of Counsel
                           Social Security Administration
                           Office of General Counsel
                           601 East 12th Street, Room 965
                           Kansas City, Missouri  64106

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On October 14, 2020, the parties to this action, consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned.  (Dkt. 17).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on March 13, 2020 (Dkt. 11), and by Defendant on May 11, 2020 (Dkt. 13).

## BACKGROUND

Plaintiff Carol M. ("Plaintiff"), brings this action under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications filed with the Social Security Administration ("SSA"), on May 18, 2017, for Social Security Disability Insurance ("SSDI") under Title II of the Act ("disability benefits").  Plaintiff alleges she became disabled on January 9, 2014, later amended to September 14, 2014, based on celiac disease, microscopic colitis (form of Chron's), and migraines. AR[2] at 33, 141, 160.  Plaintiff's application initially was denied on July 20, 2017, AR at 63-68, and at Plaintiff's timely request, AR at 72-73, on November 15, 2018, a hearing was held in Rochester, New York before administrative law judge Michael W. Devlin ("the ALJ").  AR at 30-55 ("administrative hearing").  Appearing and testifying at the administrative hearing were Plaintiff, represented by William J. McDonald, Esq., and vocational expert Peter A. Manzi ("the VE").

On February 6, 2019, the ALJ issued a decision denying Plaintiff's claims, AR at 13-29 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council.  AR at

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on November 14, 2019 (Dkt. 7).

138-140.  On June 27, 2019, the Appeals Council denied Plaintiff's request for review, AR at 1-6, rendering the ALJ's Decision the Commissioner's final decision.  On August 15, 2019, Plaintiff commenced the instant action seeking review of the ALJ's Decision.

On March 13, 2020, Plaintiff moved for judgment on the pleadings (Dkt. 11) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 11-1) ("Plaintiff's Memorandum").  On May 11, 2020, Defendant moved for judgment on the pleadings (Dkt. 13) ("Defendant's Motion"), attaching Commissioner's Brief in Response in Accord with Local Civil Rule 5.5 (Dkt. 13-1) ("Defendant's Memorandum").  Filed on July 1, 2020, was Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgement on the Pleadings (Dkt. 16) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.


**FACTS**[3]

Plaintiff Carol M. ("Plaintiff"), born April 9, 1971, was 43 years old as of her amended alleged disability date ("DOD") of September 14, 2014, AR at 16, 33, 56, 141, and 47 years old as of February 6, 2019, the date of the ALJ's Decision.  AR at 25. Upon applying for disability benefits, Plaintiff was divorced and lived in a house with her fiancé.  AR at 167.  Plaintiff graduated high school where she attended regular classes, AR at 161, and received specialized training, twice completing a certified nurses aid

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

program in 1998 and 2011.  AR at 161.  Plaintiff's past relevant work ("PRW") includes working as a laborer in a factory, a nurse in a nursing home, and a waitress in a diner. AR at 161.

At the time of her disability benefits application, Plaintiff regularly cared for her three grandchildren, ages 5, 3 and nine months for up to eight hours a day.  AR at 167-68.  Plaintiff prepared meals daily, accommodating her medically restricted diet, and engaged in housekeeping tasks as sweeping, mopping, and doing dishes.  AR at 168-69.  Plaintiff also cared for her two pet cats with her fiancé's assistance.  AR at 168. Plaintiff went outside every day, either walking or riding in a vehicle, but Plaintiff does not have a driver's license and thus does not drive.  AR at 170.  Plaintiff shopped once or twice a week, both in stores and on-line.  AR at 170.  Plaintiff's socialized with family and friends, attending bonfires and shooting pool, went to a bar, and watched her grandson's T-ball games once or twice a week.  AR at 171.

It is undisputed that Plaintiff suffers from digestive issues including lymphocytic colitis, Chron's disease and celiac disease which cause bouts of diarrhea accompanied by nausea, vomiting and abdominal pain.  Plaintiff received primary medical care through Finger Lakes Community Health where she was treated by Darlene Brezinsky, Family Nurse Practitioner ("FNP Brezinsky") from February 17, 2015 until December 8, 2016, and then through FLH Medical, P.C. where Plaintiff was treated by Eleanor H. DeWitt, M.D. ("Dr. DeWitt") commencing May 1, 2017.  AR at 476-86.  Plaintiff was also treated by various medical specialists including Angel A. Diaz, M.D. ("Dr. Diaz"), a gastroenterologist, AR at 437-75, and Ziad Rifai, M.D. ("Dr. Rifai"), a neurologist, AR at 229-37.  On May 23, 2018, Dr. DeWitt completed a physical work limitations evaluation

4

on which she reported treating Plaintiff for lymphocytic colitis, since June 8, 2017,
assessing Plaintiff's prognosis as "fair" and that the condition can be chronic.  AR at
573.  Despite Plaintiff's diagnosis, Dr. DeWitt indicated Plaintiff had few work restrictions
but Plaintiff's condition could be expected to cause Plaintiff to miss work one day per
month, AR at 574-75.  On May 27, 2018, Dr. DeWitt amended the evaluation to advise
she was not aware of additional restrictions posed by Plaintiff's colitis.  AR at 572.  On
June 21, 2018, at Plaintiff's request, Dr. DeWitt again opined on Plaintiff's disability
status, reporting Plaintiff typically contacted Dr. Diaz in connection with her
gastrointestinal complaints.  AR at 641-44.  On December 1, 2018, Dr. DeWitt
completed a Gastrointestinal Work Limitations Evaluation indicating Plaintiff's diagnoses
included anxiety, depression, and chronic diarrhea, for which the prognosis was
uncertain, and the frequency of episodes was four or more times a year, each episode
lasting less than one day to nine days, accompanied by loss of appetite and fatigue, and
exacerbated by Plaintiff's psychological condition.  AR at 683-86.  Plaintiff's
gastrointestinal complaints were managed by medications prescribed by Dr. Diaz
including Asacol (colitis), Bentyl or Dicyclomine (irritable bowel syndrome), and
Omeprazole (GERD).  AR at 494-95.  At all times relevant to this action, Dr. Rifai
treated Plaintiff for migraine headaches, right shoulder pain and right upper limb
numbness and tingling.  AR at 229-37.  Plaintiff also received treatment at Soldiers and
Sailors Memorial Hospital ("SSMH") emergency department in Penn Yan, New York on
several occasions including, as relevant here, on January 9, 2014 when Plaintiff was
admitted for two days in connection with atypical chest pain with syncopal (temporary
drop in blood flow to the brain) episode, AR at 277-92, and a similar episode on January

29, 2014, AR at 292-306, although a February 5, 2014 stress echocardiogram test showed no objective findings.  Plaintiff also sought treatment at SSMH emergency department for flareups of her gastrointestinal issues and a further syncopal episode on December 1, 2017, AR at 503-28.

## DISCUSSION

1.    **Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory

evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982). In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).   "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id.*, 523 Fed.Appx. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.    Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and

416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or

"the Listings"), and meets the duration requirement of at least 12 continuous months,

there is a presumption of inability to perform substantial gainful activity, and the claimant

is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§

423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth

step, however, if the impairment or its equivalent is not listed in Appendix 1, the

Commissioner must then consider the applicant's "residual functional capacity" or "RFC"

which is the ability to perform physical or mental work activities on a sustained basis,

notwithstanding the limitations posed by the applicant's collective impairments, *see* 20

C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant

work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains

capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is

unable to perform PRW relevant work, the Commissioner, at the fifth step, must

consider whether, given the applicant's age, education, and past work experience, the

applicant "retains a residual functional capacity to perform alternative substantial gainful

work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.

1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).

The burden of proof is on the applicant for the first four steps, with the Commissioner

bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and

416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need

not be addressed because if the claimant fails to meet the criteria at either of the first

two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

In the instant case, the ALJ found Plaintiff met the insured status requirement for SSDI through March 31, 2019, AR at 18, has not engaged in substantial gainful activity[5] since September 14, 2014, her alleged disability onset date, *id.*, and suffers from the severe impairments of lymphocytic colitis (swelling and inflammation of large intestine preventing reabsorption of as much water as it should), celiac disease, Crohn's disease, migraine headaches, and right shoulder rotator cuff syndrome, *id.*, but that Plaintiff's asserted depression is not a medically determinable impairment, *id.* at 19, and that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 1.  Despite her impairments, the ALJ found Plaintiff retains the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with additional limitations of occasionally lifting and carrying 10 lbs., frequently lifting and carrying less than 10 lbs., standing and/or walking up to two hours in an eight-hour day, sitting about six hours in an eight-hour day, occasionally pushing and/or pulling 10 pounds, occasionally climbing ramps and stairs, balance, stoop, kneel. crouch, and crawl, never climb ladders, ropes and scaffolds, frequently reach, handle, and finger with the dominant right upper extremity, and must be allowed ready access to restroom facilities. AR at 19-24.  The ALJ also found Plaintiff is unable to perform any PRW, *id.* at 24, yet Plaintiff, based on her age, high school education, ability to communicate in English,

---

[5] The ALJ's determination that Plaintiff's self-employment earnings in childcare reported after her asserted DOD did not rise to the level of substantial gainful employment, AR at 18, is not disputed.

and RFC, the VE's testimony at the administrative hearing, and in accordance with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids"), could perform other work existing in significant numbers in the national economy including as an addresser and order clerk.  *Id.* at 24-25.  Further, the transferability of Plaintiff's skills from her PRW to the two jobs identified by the VE was irrelevant to the determination under the Grids that Plaintiff is not disabled.  *Id.* at 24.  Based on these findings, the ALJ determined Plaintiff is not disabled as defined under the Act.  *Id.* at 25.

Plaintiff does not contest the ALJ's findings with regard to the first three steps of the five-step analysis, but argues that at the fourth step, the ALJ erred by failing to close evidentiary gaps in the record by obtaining treating or examining medical opinions related to Plaintiff's combined conditions, Plaintiff's Memorandum at 13-18, and the ALJ's finding that Plaintiff needed an accommodation for bathroom breaks does not sufficiently account for the frequency and duration of such breaks and is thus impermissibly vague and unsupported by substantial evidence in the record.  *Id.* at 18-24.  In opposition, Defendant argues substantial evidence supports the ALJ's RFC determination based on Plaintiff's gastrointestinal issues, Defendant's Memorandum at 13-18, and the ALJ was not required to obtain medical opinion evidence but was permitted to formulate Plaintiff's RFC based upon an assessment of the record as a whole.  *Id.* at 18-19.  In reply, Plaintiff maintains the ALJ improperly determined Plaintiff's RFC without developing the record and thus without any functional assessment or clarification from any of Plaintiff's treating physicians, Plaintiff's Reply at 1-5, and the limitation found by the ALJ that Plaintiff's flare-ups of her gastrointestinal issues can be accommodated by ready access to a bathroom for frequent and

unscheduled bathroom breaks is not based on substantial evidence. *Id.* at 6-9. There is no merit to Plaintiff's arguments.

With regard to Plaintiff's argument that the ALJ failed to obtain treating or examining medical opinions related to Plaintiff's combined conditions and, thus, failed to close evidentiary gaps in the record regarding Plaintiff's RFC, Plaintiff's Memorandum at 13-18, the ALJ is not required to develop the record by seeking a physician's function-by-function assessment of the plaintiff where, as here, the record contains sufficient evidence to permit the ALJ to render a common-sense determination. *See Monroe v. Comm'r of Soc. Sec.*, 676 Fed. Appx. 5, 6-9 (2d Cir. Jan. 18, 2017) (upholding RFC assessment where ALJ discounted the claimant's only treating physician's medical source statement without remanding for acquisition of another medical source statement where sufficient evidence in the record, including years of treatment notes dating to before the alleged onset of disability, as well as evidence of the claimant's social activities permitted the ALJ to assess the RFC) (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 34 (2d Cir. Apr. 2, 2013) (affirming ALJ's RFC determination based on extensive medical record despite the fact that the record did not include formal medical opinions regarding the claimant's RFC)); and *Pellam v. Astrue*, 508 Fed.Appx. 87, 90 (2d Cir. 2013) (upholding ALJ's RFC determination where physician's opinion was rejected but ALJ relied on physician's clinical findings and treatment notes). In evaluating whether the requisite substantial evidence exists, the court must "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and the Commissioner's findings of fact may be rejected "only if a reasonable factfinder would have to conclude otherwise." *Brault v.*

*Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted). In the instant case, the medical record is extensive and contains sufficient evidence from which the ALJ was permitted to assess Plaintiff's RFC. *See Tankisi*, 521 Fed.Appx. at 34 (remand not required to further develop the record where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity").  The ALJ may also properly consider the range of daily activities in which the plaintiff is capable of engaging despite plaintiff's medical impairments.  *See Roma v. Astrue*, 468 Fed.Appx. 16, 18-19 (2d Cir. 2012) (the claimant's undisputed activities of daily living was substantial evidence supporting the ALJ's determination the claimant was not disabled).

Specifically, with regard to Plaintiff's gastrointestinal impairments, the medical evidence of record includes office treatment notes predating Plaintiff's alleged DOD including from gastroenterologist Dr. Diaz beginning July 22, 2014.  AR 437-75.  Also, Dr. DeWitt completed three evaluations of Plaintiff's ability to work, including on May 23, 2018, when Dr. DeWitt reported treating Plaintiff for lymphocytic colitis, assessed Plaintiff's prognosis as "fair" and that the condition can be chronic, and indicated few work-related restrictions other than that Plaintiff's condition could be expected to cause Plaintiff to miss one day of work per month.  AR at 573-75.  Although on May 27, 2018, Dr. DeWitt provided an addendum advising that when she issued the May 23, 2018 statement, Dr. DeWitt was unaware that Plaintiff was treated by Dr. Diaz for colitis, recommending inquiries regarding restrictions posed by Plaintiff's colitis be directed to Dr. Diaz, AR at 572, on December 1, 2018, Dr. DeWitt completed a Gastrointestinal Work Limitations Evaluation indicating Plaintiff's diagnoses included anxiety,

depression, and chronic diarrhea, for which the prognosis was uncertain, and the frequency of episodes was four or more times a year, each episode lasting less than one day to nine days, accompanied by loss of appetite and fatigue, and exacerbated by Plaintiff's psychological condition.  AR at 683-86.  Significantly, the ALJ did not, as Plaintiff maintains, Plaintiff's Memorandum at 13; Plaintiff's Reply at 1, reject Dr. DeWitt's opinions but, rather, afforded such opinions "some weight" because the opinion evidence is inconsistent with and not indicative of greater limitations that the ALJ ultimately found.  In particular, the ALJ considered that Dr. DeWitt was not even aware until one month after first examining Plaintiff that Plaintiff was being followed by Dr. Diaz for her gastrointestinal problems, AR at 23, and that Plaintiff told Dr. DeWitt that "Dr. Diaz thinks her symptoms are too unpredictable and she may miss work due to the severity of the symptoms," *id.* (citing AR at 643), yet "Dr. Diaz never states this in any records and did not provide any opinion in this regard."  *Id.*  Plaintiff does not dispute the ALJ's finding on this point.

Nor do Dr. Diaz's treatment records, including those pre-dating Plaintiff's alleged DOD, support the alleged severity of Plaintiff's gastrointestinal impairments; rather, the treatment records show that Dr. Diaz first examined Plaintiff on July 22, 2014, not in connection with any gastrointestinal complaints, but for evaluation of gastroesophageal reflux disease ("GERD") that initially presented in January 2014 as chest pain but a cardiac workup was negative.  AR at 437.  Dr. Diaz reported Plaintiff's "bowels are regular" and Plaintiff denied any gastrointestinal issues other than GERD.  AR at 437. Dr. Diaz referred Plaintiff for an esophagogastroduodenoscopy to evaluate Plaintiff's GERD symptoms which showed some abnormal changes consistent with celiac disease

and a hiatus hernia for which plaintiff was recommended to avoid gluten, smoking, excess caffeinated beverages, tight fitting garments, and eating before bed.  AR at 440-43.  At a follow-up appointment on November 13, 2014, Plaintiff reported feeling better on the gluten-free diet.  *Id.* at 443-44.  At a March 17, 2015 examination by Dr. Diaz, Plaintiff continued to report feeling better on the gluten-free diet.  AR at 445.  It was not until September 22, 2015, that Plaintiff first reported diarrhea to Dr. Diaz, maintaining she had been experiencing diarrhea consisting of watery stools for the previous four months.  AR at 447.  Dr. Diaz's examination of Plaintiff showed normal bowel sounds, and Dr. Diaz assessed diarrhea of unclear etiology, possible secondary to celiac disease, and recommended a colonoscopy because of a family history of colon cancer. AR at 447-48.  On October 18, 2015, Plaintiff complained of abdominal pain for which the cause could not be determined upon examination and a CAT scan was recommended, AR at 452-53, which was performed at SSMH emergency department, and which showed no acute disease causing Dr. Diaz to suspect possible infectious colitis.  AR at 454-55.  A colonoscopy performed on October 30, 2015 showed several small polyps and random biopsies showed changes consistent with microscopic colitis for which Plaintiff was started on medications including bismuth (Pepto-Bismol).  AR at 456-60.  At a follow-up appointment on November 11, 2015, Dr. Diaz reported Plaintiff's symptoms of diarrhea and abdominal pain were improved.  AR at 460-61.  At further appointments on April 25, 2016, August 4, 2016, Plaintiff remained on the medications, including Pepto-Bismol. Budesonide (Chron's and colitis), Asacol, and Omeprazole, and was asymptomatic with regular bowel habits.  AR at 462-63, 464-65.  On February 13, 2017, Plaintiff complained of 5-6 loose and watery bowel movements a day, which Dr.

14

Diaz attributed to Plaintiff's recent cholecystectomy (surgical removal of gall bladder). AR at 466-67.  On April 5, 2017, Plaintiff continued to complain of diarrhea and abdominal pain, AR at 468-49, but an abdominal CAT scan performed April 10, 2017 showed "no significant abnormality."  AR at 471.  On April 26, 2017, Plaintiff underwent another colonoscopy which revealed several small polyps and random biopsies were consistent with microscopic colitis.  AR at 473-74.  Plaintiff was diagnosed with lymphocytic colitis and her medications were changed with Asacol continued and Dicyclomine increased which Plaintiff reporting improved her symptoms.  AR at 473-75. On August 15, 2017, Plaintiff again complained of diarrhea and right-sided abdominal pain, but also reported she was under stress because she was planning her wedding. AR at 494-95.  Plaintiff's medications were increased.  Significantly, upon examination by Dr. DeWitt on February 19, 2018, Plaintiff reported her medications controlledher gastrointestinal issues.  AR at 630.  Accordingly, the medical evidence in the record is inconsistent with the severity of the symptoms Plaintiff alleges and attributes to her gastrointestinal impairments.

The severity of Plaintiff's alleged gastrointestinal symptoms also is not supported by other evidence in the record, including Plaintiff's own statements regarding babysitting for up to seven children, including her own three grandchildren ranging in ages from nine months to five years old.  AR at 167-68, 630.  Further inconsistencies are evident in statements provided by Plaintiff's fiancé, Ralph Hullings ("Hullings"), and Plaintiff's best friend, Sandra Howell ("Howell").  Specifically, Hullings describes Plaintiff's alleged disability as causing Plaintiff to change her diet, and flare ups could have Plaintiff in the bathroom every 15 minutes, although medication helped and that

Plaintiff's "physical activity is good" when her condition did not "flare up," that Plaintiff used to walk more, but also that Plaintiff's doctor advised Plaintiff to join a gym to reduce stress.  AR at 183-86.  Similarly, Howell reported that since developing her gastrointestinal issues, Plaintiff was less active, was sometimes too tired to do anything, but that Plaintiff had improved since starting on medications in January 2014.  AR at 179-80.  Howell further stated that during flare-ups, Plaintiff often had to run to the bathroom and would not be able to hold a full-time job.  *Id.* at 180-81.  The ALJ found the statements by both Hullings and Howell inconsistent with treatment records which show Plaintiff with only a few periods in which Plaintiff complained of uncontrollable diarrhea and abdominal pain.  As such, the ALJ was not required to obtain an assessment from Dr. Diaz regarding Plaintiff's ability to work.

With regard to Plaintiff's other impairments, including her right rotator cuff syndrome and migraine headaches, the record establishes that after Plaintiff underwent right shoulder arthroscopy in May 2015, she demonstrated full range of motion bilaterally in the upper extremities on October 16, 2015.  AR at 343.  The record is devoid of any further complaints regarding Plaintiff's right shoulder.  As for Plaintiff's migraine headaches, the evidence in the record shows they are well-controlled with medication per Plaintiff's reports to Dr. Rifai on October 2, 2014, AR at 231, and to FNP Brezinski on December 31, 2015.  AR at 249.  The ALJ also did not err in failing to consider Plaintiff's depression as a medically determinable impairment for which the record contains no supporting evidence other than Plaintiff's statement at the administrative hearing that she was prescribed anti-depressant medication by Dr. DeWitt the previous week with Plaintiff referred to a therapist.  AR at 48-49.

Significantly, Plaintiff underwent several depression screenings by Dr. DeWitt which were negative, including on June 8, 2017, AR at 480, and February 19, 2018.  AR at 629.  Accordingly, there was no need for the ALJ to obtain any residual functional capacity assessment based on Plaintiff's right rotator cuff syndrome, migraine headaches, anxiety or depression.

Nor does anything the record indicate that Plaintiff would require such ready access to a bathroom or frequent bathroom breaks that Plaintiff's residual functional capacity would be eroded to a level where Plaintiff would be unable to work, as Plaintiff argues.  Plaintiff's Memorandum at 18-24.  *See Packard v. Berryhill,* 2018 WL 3651330, at *5 (W.D.N.Y. Aug. 1, 2018) (ALJ not required to include hypotheticals regarding the frequency of bathroom breaks where substantial evidence supports the ALJ's residual functional capacity).  As stated, Discussion, *supra*, at 7, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision,*" and "'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*'"  *Bonet ex rel. T.B.*, 523 Fed.Appx. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original)).  Accordingly, the ALJ's residual functional capacity assessment of Plaintiff, taken as a whole, is supported by substantial evidence, and Plaintiff's motion Plaintiff's motion is DENIED and Defendant's motion is GRANTED.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 11) is DENIED; Defendant's

Motion (Dkt. 13) is GRANTED.  The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      February 2nd, 2021
                   Buffalo, New York